IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GLORIA JEAN SCOTT, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-01136-BJ |
| | § | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gloria Jean Scott ("Scott") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g). Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. For reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

### I.   STATEMENT OF THE CASE

Scott filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Scott protectively filed her application in November 2018, alleging that her disability began on February 14, 2016. (Transcript ("Tr.") 11; *see* Tr. 163-72, 175-82.) After her application was denied initially and on reconsideration, Scott requested a hearing before an ALJ. (Tr. 11; *see* Tr. 85-95.) The ALJ held a hearing on March 24, 2020[1] and issued a decision on April 15, 2020 denying Scott's application for benefits. (Tr. 11-20; *see* Tr. 27-48.) On August 20, 2020, the Appeals Council denied Scott's request for review, leaving the ALJ's April 15, 2020, decision as

---

[1] At the hearing, Scott amended her alleged onset date to November 9, 2018. (Tr. 31-32.)

1

the final decision of the Commissioner in Scott's case. (Tr. 1–4.) Scott subsequently filed this civil action seeking review of the ALJ's decision.

## II.  STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA, along with numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.[2] 20 C.F.R. § 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* § 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii), (d).[3] Fourth, if disability cannot be found based on the claimant's

---

[2] The five-step sequential evaluation rules apply to applications for a period of disability, DIB, disabled widower's benefits, and SSI. *See, e.g., Brown v. Astrue*, No. 4:08-CV-155-A, 2009 WL 1402287, at *1 (N.D. Tex. May 18, 2009).

[3] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. § 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 416.920(a)(4)(v).

2

medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* § 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the

Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In her brief, Scott presents the following issues:

1. Whether the ALJ's physical residual functional capacity ("RFC") determination is not supported by substantial evidence because the ALJ failed to properly assess the medical opinion evidence in the record; and

2. Whether the ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to include any mental limitations found by the ALJ in the "special technique."

(Plaintiff's Brief ("Pl. 's Br.") at 1, 10–18.)

### IV.   ALJ DECISION

In her April 15, 2020 decision, the ALJ found at Step One that Scott had not engaged in any substantial gainful activity since November 9, 2018, the application date. (Tr. 13.) At Step Two, the ALJ determined that Scott suffered from the following "severe" impairments: "tendon tear in shoulder, obesity, fibromyalgia, and lumbar degenerative disc disease with facet arthritis." (Tr. 13.) At Step Three, the ALJ found that Scott did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 15.)

As to Scott's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 416.967(a) except she can only occasionally climb stairs and ramps and never climb ladders or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch. She can never crawl. She needs to avoid concentrated exposure to slippery wet surfaces, industrial types of vibration, and hazards such as unprotected heights and moving mechanical parts.

(Tr. 16 (emphasis omitted).) Based upon this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ concluded that Scott could perform her past relevant work as a court clerk

4

(Dictionary of Occupational Titles ("DOT") no. 243.362-010), as actually and generally performed in the national economy. (Tr. 19-20.) Consequently, the ALJ found that Scott was not disabled. (Tr. 20.)

## V. DISCUSSION

### A. Medical Opinions and Physical RFC Determination

In her brief, Scott argues that substantial evidence does not support the ALJ's physical RFC determination because the ALJ "improperly analyzed the opinion evidence of record and overlooked the consistency of those opinions with the medical evidence," particularly regarding the opinions of the state agency medical consultants ("SAMCs") and Gary Pritchett, D.C. ("Dr. Pritchett") about Plaintiff's ability to reach with her left arm. (Pl.'s Br. at 10.) Regarding the SAMCs' opinions, Scott argues:

> Here, the state agency medical consultants found that Plaintiff was limited in reaching in all directions with both arms, and in reaching overhead with her left arm. The ALJ found that manipulative limitations were well-supported by the evidence of Plaintiff's chronic left shoulder pain; however, she further found that subsequent examination findings showing abnormalities in tenderness and range of motion of the left upper extremity indicated that Plaintiff "is slightly more limited" than the medical consultants determined. While the consultants did not specify the degree to which Plaintiff was so limited even the slightest limitation would reduce Plaintiff from constantly to frequently reaching overhead and in all directions. The logical inference, then, is that the ALJ found that Plaintiff was occasionally, and not frequently, capable of reaching bilaterally. However, the RFC is devoid of any reaching limitations.

(Pl.'s Br. at 11 (internal citations omitted).) Regarding Dr. Pritchett's medical opinions, Scott argues:

> Similarly, Plaintiff's treating provider, Chiropractor Pritchett, also found Plaintiff had bilateral reaching limitations. Here, despite finding that the state agency medical consultants' manipulative findings were not limiting enough, the ALJ concluded that Dr. Pritchett's opined limitations were too restrictive. In support of her conclusion, the ALJ again referenced the same recent examination

5

findings reflecting deficits in range of motion, yet this time as a means of discrediting Dr. Pritchett's opinion.

As such, the ALJ concluded that this evidence, on one hand, was indicative of further reaching limitations, then on the other, did not support these further limitations. This rationale, however, is flawed. The ALJ cannot have it both ways by first concluding that the same evidence supports a further limitation, then concluding that it does not. It is unclear how the ALJ determined that Chiropractor Ptichett's [sic] opinion was not consistent with the evidence, when she also determined that same evidence warranted a greater degree of reaching limitations.

. . . .

The ALJ also cites normal reflexes, sensation, muscle tone, and muscle strength as a basis for discrediting Chiropractor Pritchett's opinion. Such findings, however, are irrelevant to a determination of one's ability to reach overhead, or in all directions. Just because she displays normal strength on examination does [not] mean Plaintiff, who suffers from left shoulder rotator cuff and labral tears documented on a February 18, 2020 MRI, can otherwise reach above her head and in all directions. To the contrary, the relevant objective medical evidence establishes that Plaintiff has limited functional external and internal rotation on reaching, diminished flexion, extension, abduction, adduction, internal rotation, external rotation, and scaption in the left shoulder, as well as a restricted passive joint mobility in the left shoulder, as confirmed on a more recent March 20, 2020 physical examination. This evidence, rather than muscle tone or strength, is probative of Plaintiff's residual reaching capacity.

. . . .

The ALJ's failure to properly assess and evaluate the medical opinion evidence of the state agency medical consultants and treating Chiropractor Pritchett resulted in an RFC that was devoid of any expert opinion to support it. Rather, the ALJ conducted her own interpretation of the objective MRI and examination findings and crafted an RFC that consisted of nothing more than her own lay assessment. This is error. . . .

The ALJ's error was harmful because a restriction for only occasional reaching would have resulted in a finding that Plaintiff was disabled. Recall that the state agency medical consultants opined that Plaintiff was limited in reaching in all directions with both arms, and in reaching overhead with her left arm. Chiropractor Pritchett further defined the extent of those limitations as reaching for only five percent of the time during an eight-hour workday. The VE acknowledged that if an individual with Plaintiff's age, education and work experience, and RFC

6

were further limited to only occasional reaching, all work at the sedentary level would be precluded. Thus, Plaintiff is disabled.

(Pl. 's Br. at 11–15 (internal citations omitted).)

The ALJ, in formulating Scott's physical RFC, analyzed, *inter alia*, Scott's own statements, a large volume of medical evidence, and the treatment notes and/or opinions of multiple medical providers, including the following: (1) Mahmood Panjwani, M.D. ("Dr. Panjwani"), the consultative examiner (Tr. 16); (2) Dr. Pritchett (Tr. 17-18); (3) Olabisi Agbaje, FNP (Tr. 17); (4) Mark Madenwald, M.D., an emergency room doctor (Tr. 17-18); (5) Cary Byron Clark, an emergency room doctor (Tr. 17-18; (6) Jacqueline Smith, a physical therapist (Tr. 17-18); and (7) Yvonne Post, D.O. and Patty Rowley, M.D., the SAMCs (Tr. 18.) Regarding the opinions of the SAMCs and Dr. Pritchett, the ALJ stated:

> I have fully considered the medical opinions and prior administrative findings as follows:
>
> The prior administrative findings from the State agency medical consultants, Yvonne Post, D.O., and Patty Rowley, M.D., that the claimant could perform a range of light work but with additional postural and manipulative restrictions are not persuasive. The consultants supported their determination by discussing the claimant's claimant [sic] left shoulder and lumbar pain as well as a diagnosis for degenerative disc disease. Even though the consultants supported their determinations with a summary and discussion of the evidence, additional evidence received at the hearing level supports finding that the claimant is slightly more limited than they found. The evidence showed the claimant had periodic abnormalities in tenderness and range of motion of the lumbar spine and left upper extremity, positive empty can maneuver, and lumbar muscle spasms. Thus, the prior administrative findings from the State agency medical consultants are not persuasive.
>
> The claimant's provider, Gary Pritchett, D.C., completed a medical source statement indicating the claimant had significant limitations in sitting, standing, walking, lifting/carrying, and reaching as well as attention and concentration. The provider indicated his answers were based on her history and current interview. He admitted he did not have current objective findings or testing. Additionally, his opinion is not consistent with the evidence as a whole because the examinations showed the claimant had normal reflexes, sensation, and range of motion, muscle tone, and muscle strength. Even when the claimant had some abnormalities in

7

range of motion and strength of the left upper extremity, the examiner indicated it was mild deficits. For these reasons, I find the opinion from Dr. Pritchett is not persuasive.

(Tr. 16-18 (internal citations omitted).) In addition, the ALJ stated:

Overall, the claimant's treating records were generally consistent with her medically determinable impairments. However, they are not consistent with the claimant's subjective reports of disabling symptoms and suggest that her symptoms are not as severe as she alleged. The medical evidence failed to indicate that the claimant experiences symptoms that cause work-related functional limitations beyond those outlined in the above stated residual functional capacity. Specifically, the evidence of record indicates that, despite treatment in the form of medication and physical therapy, the claimant has functional limitations due to fibromyalgia, degenerative disc disease of the lumber spine with facet arthritis, tendon tear of the shoulder, and obesity. However, this evidence shows that she retains the functional abilities to perform sedentary work with postural and environmental limitations, as reflected in the above stated residual functional capacity. Specifically, the claimant's tenderness and limited range of motion in the lumbar spine and left upper extremity in combination with fibromyalgia and obesity supports limiting the claimant to sedentary work with the postural and environmental restrictions outlined above. Limiting the claimant to sedentary work adequately takes into consideration the limitations caused by the tendon tear to the left shoulder. Thus, additional manipulative limitation is not supported.

(Tr. 17-18.)

RFC is what an individual can still do despite their limitations.[4] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and it is based upon all of the

---

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers

8

relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

---

all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

9

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 416.920c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 416.920c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a medical source provides one or more medical opinions[6] or prior administrative medical findings,[7] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of [section 416.920c], as appropriate." 20 C.F.R. § 416.920c(a) (footnotes added). The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 416.920c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1)

---

[6] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 416.913(a)(2).

[7] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 416.913(a)(5).

of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 416.920c(a) (footnotes added). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at *7.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart*, 2005 WL1994289, at *7 (5th Cir. Aug. 19, 2005). In this case, the ALJ found, as stated above, that Scott had the physical RFC to perform sedentary work with the following restrictions: (1) she can only occasionally climb stairs and ramps and never climb ladders or scaffolds; (2) she can occasionally balance, stoop, kneel, and crouch but never crawl; and (3) she needs to avoid concentrated exposure to slippery wet surfaces, industrial types of vibration, and hazards such as unprotected heights and moving mechanical parts. (Tr. 16.) At issue here is the ALJ's treatment of the medical opinions of the SAMCs and Dr. Pritchett regarding Scott's manipulative limitations.

In a RFC Assessment dated March 18, 2019, SAMC Yvonne Post, D.O. ("SAMC Post") opined, in essence that Scott had the RFC to perform light work[8] as limited as follows: (1) the

---

[8] Pursuant to 20 C.F.R. § 416.967(b), light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

11

postural limitations of frequent climbing ramps and stairs and crouching, and the occasional climbing of ladders, ropes, and scaffolds, stooping, and crawling and (2) the manipulative limitation of being limited in her ability to reach overhead with the left arm.[9] (Tr. 58-60.) SAMC Post explained that the "[left] overhead reaching limited to frequently due to chronic [left] shoulder pain." (Tr. 72.) At the Reconsideration Level, SAMC Patty Rowley, M.D. ("SAMC Rowley") came to the same conclusion regarding Scott's physical RFC. (Tr. 71-74.)

Dr. Pritchett opined, in a Physical Assessment dated December 3, 2018, that Scott could frequently lift less than ten pounds, occasionally lift ten pounds, and never lift twenty or more pounds. (Tr. 311.) In addition, Dr. Pritchett opined that Scott could only reach with her arms 5% of the time during an eight-hour workday, could sit a total of four hours and stand or walk a total of one hour in an eight-hour workday. (Tr. 311.)

The ALJ, in making his physical RFC determination, dedicated multiple pages to considering and analyzing the medical and other evidence in the record. The ALJ considered the opinions of the SAMCs as well as the opinions of Dr. Pritchett in making such RFC determination. Ultimately, after considering all of the evidence and medical opinions, the ALJ decided to restrict Scott to sedentary work, as opposed to light work, with more restrictive postural limitations than

---

20 C.F.R. 416.967(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id. at* *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.* " 'Occasionally' means occurring from very little up to one-third of the time." *Id.* at *5. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id.*

[9] Scott claims that the SAMCs opined that Plaintiff "was limited in reaching in all directions with both arms, and in reaching overhead with her left arm." (Pl.'s Br. at 11.) The Court disagrees with Scott's characterization of the SAMCs' opinions. From the Court's reading, it appears that the SAMCs opined that Scott was only limited in her ability to reach overhead with her left arm and not (as claimed by Scott) that she was limited in reaching in any direction with both arms as well as limited in her ability to reach overhead with her left arm. (*See* Tr. 58-59, 72.)

12

found by the SAMCs. It is clear that the ALJ carefully considered all the medical opinions and medical evidence in the record in carefully formulating a physical RFC for Scott, specifically noting that limiting Scott to sedentary work "adequately takes into consideration the limitations caused by the tendon tear to the left shoulder," and, consequently, "an additional manipulative limitation is not supported."

Consequently, the Court finds that the ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions in the record, but also the other medical evidence in the record to determine Scott's RFC. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence and exercised his responsibility as fact finder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse*, 925 F.2d at 790. The ALJ properly weighed the opinions of the SAMCs and Dr. Pritchett against the other evidence and the record as a whole. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021) (internal quotations omitted). Because there is substantial evidence in the record that supports the ALJ's RFC determination, remand is not required.

### B. Mental RFC Determination

In her brief, Scott also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include any mental limitations found by the ALJ in the "special technique." In support, Scott states:

> At step two of the evaluation process, the ALJ found that Plaintiff's mental impairment of adjustment disorder with depressed mood was non-severe. The ALJ also found that Plaintiff had mild limitations in all four areas of mental functioning

13

> due to this impairment. Despite finding these limitations, the RFC is devoid of any mental limitations.
>
> The failure to include these mental limitations into the RFC is error. The RFC must reflect the most someone can do despite their mental and physical limitations. . . .
>
> The ALJ's finding of a non-severe mental impairment does not cure the error of failing to incorporate the limitations resulting from that impairment into the RFC. . . . Here, even a mild limitation in Plaintiff's ability to maintain concentration, persistence, or pace, as found by the ALJ, could have impacted her capacity to remain on-task in a work setting. The ALJ, herself, acknowledged this by finding the opinion of the consultative examiner, Dr. Brucken, "persuasive," and supported by the medical evidence. Recall that Dr. Brucken opined that Plaintiff's mental health issues "may affect her ability to adequately engage and complete work tasks within an acceptable timeframe." Despite this, the RFC contains no restrictions or accommodations for any limitation in concentration, persistence, or pace.

(Pl.'s Br. at 15-16 (internal citations omitted).)

In her decision, the ALJ found, at Step Two, that Scott's mental impairment of "adjustment disorder with anxiety and depressed mood does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 14.) In making this determination, the ALJ, at Step Three, set forth her analysis of Scott's mental impairments under "Paragraph B," finding that Scott had a (1) mild limitation in understanding, remembering, or applying information; (2) mild limitation in interacting with others; (3) mild limitation in concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing oneself. (Tr. 14-15.) In addition, the ALJ analyzed, *inter alia*, the information provided by Smith, treatment notes, the opinions of the State Agency Psychological Consultants ("SAPCs") and Rosemary Brucken, Psy.D. ("Dr. Brucken"), the consultative examiner, stating:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual

14

> functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.
>
> . . . .
>
> The prior administrative findings from the State agency psychological consultants, Richard Campa, Ph.D., and Michele Chappuis, Ph.D. that the claimant had no severe mental impairments are persuasive. The consultants supported their determinations by discussing the consultative examination that showed mostly normal mental status findings. Their determinations are consistent with the evidence as [a] whole, which showed the claimant had abnormalities in mood and affect but normal findings in behavior, attitude, judgment, orientation, appearance, and thought content.
>
> The consultative examiner, Dr. Brucken, opined the claimant could follow and [sic] simple and more complex instructions because she had adequate social skills, cognitive abilities, insight, and judgment. She opined the claimant's ability to adequately engage and complete work tasks might be affected by her depression, anxiety, and adjustment issues. I find this opinion is persuasive because the evidence showed the claimant had normal findings in orientation, behavior, attitude, judgment, appearance, and thought content but occasional depressed or anxious mood or affect.

(Tr. at 15, 18-19 (internal citations omitted).)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. *See* 20 C.F.R. § 416.920a(a). In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. § 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 416.920a(b)(1); *Boyd*, 239 F.3d at 705. The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's mental impairments. 20 C.F.R. § 416.920a(c). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. § 416.920a(c)(3). The ALJ further stated that, "[b]ecause the claimant's medically

15

determinable mental impairment causes no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere." (Tr. at 15 (internal citations omitted).)

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine if it meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

In this case, contrary to Scott's claims, it is clear that the ALJ properly applied the special technique in analyzing Scott's mental impairments and making the ultimate disability determination, including in finding that Scott was only mildly limited in all four paragraph B functional areas. Scott's argument to the contrary "misconstrues the relationship between the ALJ's step three findings and his RFC determination." *Mendez v. Saul*, No. 7:19-CV-291, 2021

WL 1217376, at *11 (S.D. Tex. Jan. 6, 2021). The "limitations identified in the 'paragraph B' . . . criteria of the mental disorders listings, as considered in the special technique, are not an RFC assessment but are used to rate the severity of a claimant's mental impairment(s) at steps two and three of the sequential evaluation process." *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments . . . ." SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. 1996); *see Watts v. Saul*, No. 4:19-CV-00713-Y, 2021 WL 742888, at *13 (N.D. Tex. Jan. 11, 2021). Moreover, "[w]hile the regulations require the ALJ to evaluate[ ] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into . . . the RFC determination." *Patterson v. Astrue*, No. 1:08–CV–109–C, 2009 WL 3110205, at *5 (N.D. Tex. Sept.29, 2009).

In reaching her mental RFC determination, the ALJ thoroughly examined the evidence in the record, including Scott's statements, treatment notes, and the opinions of the SAPCs and Dr. Brucken. The ALJ found, based on this evidence, that Scott's mental impairments were not severe and did not incorporate any mental limitations into the RFC determination. As noted above, the ALJ is not required to incorporate the limitations identified in the Paragraph B functional areas as such limitations are not an RFC assessment as long as substantial evidence supports the ALJ's RFC determination. "Because 'the ALJ sufficiently considered [Scott's] mental impairments in calculating the RFC, [the ALJ] did not err by not including any mental limitations in the RFC.'" *Danny R.C. v. Berryhill*, No. 3:17-CV-1682-BH, 2018 WL 4409795, at *15 (N.D. Tex. Sept. 17,

17

2018); *see Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016) (finding that substantial evidence supported the ALJ's decision not to include any of the mild limitations found in the Paragraph B functional areas into the mental RFC determination for the claimant's nonsevere mental impairment). Consequently, remand is not required.

## **CONCLUSION**

The ALJ's decision is **AFFIRMED** in all respects.

SIGNED September 14, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE